### In re WYOMING VALLEY ICE CO.

(District Court, M. D. Pennsylvania.    December 14, 1908.)

No. 558, in Bankruptcy.

1. TAXATION (§ 454*)—CORPORATIONS—RESETTLEMENT—STATUTES.

Act Pa. March 30, 1811 (5 Smith's Laws, p. 231) § 16, declares that the Auditor General and State Treasurer, at the request of each other or of the party, shall revise any settlements made by them, except such as have been appealed from, or which, by any other proceeding had been taken out of their offices, if any request be made within 12 months of the date of settlement; but after that time no settlement on which a final discharge has been granted shall be opened, but the same shall be quieted and finally closed. *Held*, that the officers, either of their own motion or at the instance of the party, may revise taxes which have been settled but not taken out of their hands by appeal or otherwise, provided action is taken within the time specified and a final discharge has not been allowed.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 810; Dec. Dig. § 454.*]

2. TAXATION (§ 530*)—SETTLEMENTS—FINAL DISCHARGE.

Where, after taxes had been settled against a corporation by the Auditor General and State Treasurer, the corporation became a bankrupt, and on petition the taxes were resettled and reduced both on corporate loans and on capital stock, which amounts were allowed by the referee and the tax on capital stock was paid by the trustee, but the tax on loans was reversed, on appeal, the payment of the tax on the capital stock constituted a discharge as to them.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 985; Dec. Dig. § 530.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. TAXATION (§ 478*)—CORPORATIONS—RESETTLEMENT. .

   Act Pa. March 30, 1811 (5 Smith's Laws, p. 231) § 16, authorizes the Auditor General and State Treasurer to revise tax settlements made by them, except such as have been appealed from or which by any other proceedings have been taken out of their offices, if such request be made within 12 months from the date of settlement; but after that time no settlement on which a final discharge has been granted shall be opened, but the same shall be quieted and finally closed. *Held* that, in order to prevent a resettlement of taxes assessed against a corporation, the taxes must have been paid and 12 months also have elapsed from the date of settlement without any attempt to resettle.

   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 852; Dec. Dig. § 478.*]

4. LIMITATION OF ACTIONS (§ 11*)—LIMITATIONS AGAINST STATE.

   Time does not run against the commonwealth except in case there is something to raise an estoppel, or the law so expressly provides.

   [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 36; Dec. Dig. § 11.*]

In Bankruptcy. On certificate from E. Foster Heller, referee.

Joseph E. Fleitz, for the Commonwealth.

W. S. McLean, for trustee.

ARCHBALD, District Judge. The question is how far in Pennsylvania a state tax on capital stock, which has been once settled and paid, can be resettled and enlarged. This depends of course on the local law. On January 11, 1905, the Auditor General and State Treasurer of Pennsylvania, as fiscal officers of the commonwealth, settled against the respondent corporation a capital stock tax of $497.50 for each of the years from 1901 to 1904, inclusive, amounting in the aggregate to $1,990. These were estimated settlements, based on the supposed value of the stock according to the best information obtainable, the company having failed to make the annual reports required by law, by which they might otherwise have been guided. Certified copies of these settlements were subsequently filed in the prothonotary's office of the proper county on April 19, 1905, whereby preferred liens were acquired on the franchises and property of the corporation. There was also at the same time, and in the same way, a settlement of taxes against the company on corporate loans to the amount of $1,408.34, for which liens were likewise entered. Meantime, however, on March 17, 1905, the company was forced into bankruptcy; and following this a petition was presented on behalf of the commonwealth for the preferred payment out of the bankrupt estate of both these sets of taxes, which was sent to the referee for consideration. Pending the disposition of it on February 16, 1906, on representations made on the accounting officers and a plea of poverty, there was a reconsideration and resettlement of these taxes, the one being reduced to $610, and the other to $900. Both, as so reduced, were allowed by the referee, and, the liability for the tax on capital stock being conceded, it was paid by the trustee, March 22, 1906, on the referee's order. But on appeal to the court as to the taxes on corporate loans, it was held that, being due in reality from bondholders, the company being merely a collector,

they were not a tax as to it, but merely a liability arising out of the duty to collect imposed by the statute, and were not, therefore, entitled to the priority of payment contended for. In re Wyoming Valley Ice Company (D. C.) 16 Am. Bankr. Rep. 594, 145 Fed. 267. Disappointed at this outcome, and confessedly because of it, the accounting officers of the commonwealth, although payment had been made of the reduced amount at which the taxes on the capital stock had been resettled, undertook to reopen the matter, and on April 26, 1906, another settlement was made, which went back to and restored the original amount of $1,990. Crediting on this, as a payment on account, the $610 received, claim is now made on behalf of the commonwealth for the balance. The referee denied the claim, holding that there had been a final acquittance, in the face of which the attempted resettlement was invalid, and the case now comes up on exceptions to his report.

The right to revise and resettle a state tax in Pennsylvania is governed by Act March 30, 1811 (5 Smith's Laws, p. 231) §' 16, which provides as follows:

"The Auditor General and State Treasurer at the request of each other or of the party, shall revise any settlements made by them, except such as have been appealed from or which by any other proceedings have been taken out of their offices, if such request be made within twelve months of the date of settlement; but after that time no settlement on which a final discharge has been granted shall be opened, but the same shall be quieted and finally closed."

The construction of this statute is plain. Under it, either of their own motion or at the instance of a party interested, taxes which have been settled, but not, by appeal or otherwise, taken out of their hands, may be re-examined and revised by the accounting officers referred to, provided that action be taken within the time specified and a final discharge has not been allowed. Where, however, 12 months have elapsed after the original settlement, and there has been a discharge of the taxes by payment meantime, by the express terms of the statute there can be no reopening of the question, but the settlement stands as made. That was the law under the previous statute. Respublica v. Sergeant, 3 Yeates (Pa.) 544. And except as to the matter of intermediate payment there has been no change.

That the payment of the taxes by order of the referee in the present instance, on petition of the accounting officers of the commonwealth, based on the reduced settlement, amounted to a final discharge within the meaning of the law, there can be no doubt. Whether so intended or not, that was the necessary result. It does not matter that a receipt in full was not given, if that indeed was the fact, nor that the reduction of the capital stock tax was made in anticipation that the tax on corporate loans would be paid. Except that both were against the same party, the two had no connection. Nor is it like the case where there has been an entire omission of the tax, or an acceptance of less than the whole; where the commonwealth is not to be prejudiced by the action of the accounting officers. Easton Bank v. Commonwealth, 10 Pa. 442; Delaware Canal Company v. Commonwealth, 50 Pa. 399. The original settlement here was revised and reduced, and, the commonwealth having petitioned for preferred pay-

ment, the taxes were allowed and paid. Clearly, after that, any attempted revision would have to take that into account.

But unfortunately for the general creditors, that is not all that is required for a bar. Not only must the tax have been discharged, but the time limited by the statute must also have elapsed. Conceding —contrary to what seems to be decided in Commonwealth v. Pennsylvania Co., 145 Pa. 266, 23 Atl. 549—that this begins to run not from the time of payment, but from the time when the settlement which is revised was made, the settlement here upon which the taxes were paid was February 16, 1906, and the resettlement on which the present claim is based was April 26th following, the two being only a little over two months apart.

It is not as though the settlement of April, 1906, was a resettlement of that of January, 1905, with a payment in between. The settlement that was revised was the reduced one of February, 1906, and the two are not to be confused. Neither is the settlement here in question to be identified with the one of January, 1905, because it goes back to and adopts the figures which there obtain. Nor is any stress to be laid on the fact that the liens which had been entered on the original remain unsatisfied. If tied to or identified with that, the present settlement, being more than 12 months afterwards, could not be sustained. It is only as it undertakes to revise the reduced settlement of February, 1906, that it is brought within the law.

The referee is of opinion that the commonwealth, having come into court and asserted and been allowed preferred payment on the basis of the reduced settlement, thereby confirmed it beyond recall, and thus took the case out of the hands of the Auditor General and State Treasurer, within the meaning of the law. There is nothing, however, to sustain this view. In so doing, the commonwealth was merely pursuing the orderly method provided for enforcing and collecting the taxes, and there is nothing to prevent it, because of this, from asserting its right to a further sum when the proper steps have been taken to make this due. Nor is it of any account that it has waited over two years to do so. Time does not run against the commonwealth, except as there is something to raise an estoppel, or the law so expressly provides; which cannot be alleged here.

The exceptions are sustained, and the case is sent back to the referee with directions to allow the balance of taxes claimed.